IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUDITH L. W., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:19-cv-02806-E-BT |
| ANDREW SAUL, | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Judith L. W.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Commissioner's decision should be AFFIRMED.

## Background

Plaintiff alleges disability beginning October 13, 2016, arising from several physical and mental impairments: back problems, obesity, osteoarthritis, remote history of right rotator cuff tear with surgical repair, and chronic migraine headaches. Pl.'s Br. 2–5 (ECF No. 12); Administrative Record (A.R.) 16 (ECF No.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

10-1). After her application for disability insurance benefits was denied initially—and upon reconsideration—Plaintiff requested a hearing before an administrative law judge (ALJ). That hearing took place in Dallas, Texas on July 12, 2018. A.R. 29 (ECF No. 10-1). At the time of the hearing, Plaintiff was fifty-seven years old. *Id.* at 35. She has a master's degree, can communicate in English, and has past work experience as a medical secretary and general office clerk. *Id.* at 22, 31, 39–49; Pl.'s Br. 2 (ECF No. 12).

The ALJ issued her written decision on January 11, 2019. A.R. 11 (ECF No. 10-1). Finding that Plaintiff was not disabled under the Social Security Act, she denied Plaintiff's application for disability insurance benefits. *Id.* at 23. At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity since October 13, 2016. *Id.* at 16. At step two, the ALJ found that Plaintiff has the following severe impairments: "[o]besity, back

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

2

disorder, [o]steoarthritis, and [r]emote history of rotator cuff tear with surgical repair." *Id.* at 16–17. Nevertheless, at step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 17. At step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform a limited range of sedentary work, and that she can "occasionally climb ramps/stairs, climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl," and can "understand remember, and carry out detailed, not complex instructions." *Id.* at 17–18. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." A.R. 23 (ECF No. 10-1). This would allow Plaintiff to perform jobs such as data entry clerk, clerk typist, and insurance clerk with "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry" needed. *Id.*

Plaintiff appealed the hearing decision to the Appeals Council, which denied her request for review. *Id.* at 5–7. Plaintiff subsequently filed this action in federal district court on November 25, 2019. Compl. (ECF No. 1). She raises two main arguments to support her claim that the ALJ's decision is not supported by substantial evidence: (1) the ALJ failed to establish that Plaintiff has skills transferable without significant vocational adjustment; and (2) the ALJ erred in

failing to consider all of Plaintiff's vocationally significant impairments in determining her RFC. Pl.'s Br. 5–6, 9 (ECF No. 12); Compl. 2, ¶ 7 (ECF No. 1).

## Legal Standards

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Copeland*, 771 F.3d at 923 (quoting *Perez*, 415 F.3d at 461). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392–93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

4

## Analysis

## I

Plaintiff first argues that the ALJ erred by failing to establish that she has skills transferable without significant vocational adjustment. Pl.'s Br. 5 (ECF No. 12). The Court concludes, however, that there is substantial evidence to support the ALJ's step-five finding.

An individual is disabled under the Social Security Act when she is unable to perform past relevant work (PRW) and "engage in any other kind of substantial gainful work which exists in the national economy." SSR 82-41, 1982 WL 31389, at *1. While the claimant bears the burden of establishing the first four categories in the disability analysis, this burden shifts to the Commissioner at step five to prove that the claimant can complete such work. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). In determining whether the Commissioner has met this burden, the ALJ considers, among other things, the claimant's age as a relevant vocational factor—since "advancing age decreases the possibility of making a successful vocational adjustment." SSR 82-41, 1982 WL 31389, at *5; *see also* 20 C.F.R. § 404.1563.

If the claimant is fifty-five or older, she is considered to be of "advanced age" and special rules apply. 20 C.F.R. § 404.1563(e). For example, a claimant of advanced age limited to sedentary work only has transferable skills if the "sedentary work is so similar to [her] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work

settings, or the industry." 20 C.F.R. § 404.1568(d)(4); SSR 82-41, 1982 WL 31389, at *5. In other words, "the semiskilled or skilled job duties of [the claimant's] past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." SSR 82-41, 1982 WL 31389, at *5.

Plaintiff here claims the Commissioner failed to sufficiently prove she can transfer her skills to other jobs existing in significant numbers in the national economy. Pl.'s Br. 2 (ECF No. 12). Specifically, she argues there is no substantial evidence to support the ALJ's finding because "the ALJ never asked the VE to comment upon the *degree* of vocational adjustment which would be required in order for [Plaintiff] to transfer her skills to the occupations identified by the VE, nor did the VE volunteer such information." *Id.* at 8–9 (emphasis added). Since the ALJ is not herself an expert witness, Plaintiff takes exception to what she perceives as the ALJ substituting "her own vocational opinion for actual evidence." Pl.'s Reply 4 (ECF No. 16). As such, Plaintiff claims reversal—or, in the alternative, remand for further consideration—is required. *Id.* at 6.

Courts in this Circuit, however, have rejected similar claims challenging an ALJ's step-five finding based on the failure to explicitly address the degree of vocational adjustment needed for those of advanced age. While other Circuits require the ALJ to elicit information from the VE regarding the level of vocational adjustment a claimant would need to perform new jobs, *see Webster v. Barnhart*,

187 F. App'x 857, 861 (10th Cir. 2006); *Draegert v. Barnhart*, 311 F.3d 468, 477 (2d Cir. 2002); *Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir. 1986), the Fifth Circuit has not expressly ruled on this issue. *Sergent v. Astrue*, 2011 WL 3299051, at *10 (S.D. Tex. Aug. 1, 2011). The Fifth Circuit has made clear, however, that a case will not be remanded merely because the ALJ failed to use "magic words." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Courts will only remand if "there is no indication that the ALJ applied the correct legal standard." *Id.*

In the present case, the record demonstrates that the ALJ applied the correct legal standard to determine whether Plaintiff had transferrable skills—that is, whether Plaintiff would need to make very little, if any, vocational adjustment to the jobs recommended by the VE in terms of the tools, work processes, work settings, or the industry. And the record shows the ALJ made a specific finding in her written decision that Plaintiff's age, education, work experience, and RFC allowed for Plaintiff to transition into other jobs in the national economy with the need for very little, if any, vocational adjustment. A.R. 22–23. Accordingly, the ALJ applied the correct legal standard, thus avoiding error in making her step-five finding.

First, the ALJ found that Plaintiff has acquired various skills from her PRW. *Id.* at 22. Her PRW as a medical secretary required skills like operating a computer, compiling records and medical charts, answering the telephone, and maintaining files. *Id.* at 22. This finding is supported by substantial evidence in the form of testimony by the VE, *Id.* at 44, and by Plaintiff herself, who described her

numerous duties as "interacting with the patients and the families, and typing detailed cancer treatment summaries, and maintaining the patient files for research as well as discussing different issues with the families over the telephone" and typing letters and correspondence. *Id.* at 37–38. According to Plaintiff, she engaged in such activity for about twenty-five years. *Id.* at 36.

With the aid of VE testimony, the ALJ found that these skills would be transferable to the sedentary jobs of data entry clerk, clerk typist, and insurance clerk. A.R. 22–23 (ECF No. 10-1). The ALJ specifically noted in her written decision that the duties that come with these positions are "so similar" to those required for Plaintiff's prior work experience that Plaintiff would need to make very little, if any, vocational adjustment to perform them. *Id.* at 23. As the VE testified, this conclusion is consistent with the Dictionary of Occupational Titles (DOT). According to the DOT, a medical secretary "[p]erforms secretarial duties" such as taking dictation, compiling records and correspondence, using a word processor, maintaining files, answering the telephone, scheduling appointments, and greeting and directing visitors. DOT 201.362-014. These "secretarial duties" are almost identical to those clerical duties performed by the occupations the ALJ found appropriate for Plaintiff. For example, a data entry clerk enters data from source documents into a computer and may compile, sort, and verify the accuracy of data to be entered. DOT 203.582-054. Clerk typists use computers to compile data and perform routine clerical duties, file records, and answer the telephone. DOT 203.362-010. And an insurance clerk compiles and maintains records, fills in

8

data on applications, compiles statistical data, and types schedules. DOT 219.387-014.

Given this substantial similarity of Plaintiff's PRW to the duties required for the clerk positions identified by the VE, the ALJ reasoned that after "considering [Plaintiff's] age, education and transferable skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.07, section 201.00(f) of the Medical-Vocational Guidelines, and 20 CFR 404.1568(d)." A.R. 23 (ECF No. 10-1). This finding shows that the ALJ specifically considered section 201.00(f) of the Medical-Vocational Guidelines, which pertains to the finding of vocational adjustment to sedentary work for those of advanced age, and Rule 201.07, which advises that an individual of advanced age with at least a high school diploma and possessing transferable skills is not disabled. *See* 20 C.F.R. Subpt. P, App. 2, § 201.00(f).

The court in *Sergent v. Astrue* explained that the ALJ's citation to section 202.00(f), an equivalent provision for vocational adjustment to *light work*, was "the most convincing evidence that the ALJ . . . applied the correct legal standard." *Sergent v. Astrue*, 2011 WL 3299051, at *12 (S.D. Tex. Aug. 1, 2011). Consideration of section 201.07 was also instrumental to the court finding the ALJ applied the correct standard in reaching its step-five finding in *Blair v. Comm'r. See* 2014 WL 5336483, at *12 (E.D. Tex. Sept. 30, 2014) ("the ALJ's opinion states that he considered Plaintiff's 'age, education and transferable work skills' and references application of Medical-Vocational Rule[] 201.07 . . . . Therefore, the ALJ applied

the correct legal standard and satisfied his burden at Step Five."). Accordingly, the Court finds that the ALJ applied the correct legal standard when assessing Plaintiff's necessary vocational adjustment at step five.

Plaintiff, however, alleges that *Devirrie U. W. v. Saul* and *Homer v. Astrue*, demand reversal or remand. Pl.'s Br. 5 (ECF No. 16) (citing *Devirrie U. W. v. Saul*, 2019 WL 4689026 (N.D. Tex. Sept. 26, 2019) (Rutherford, J.); *Homer v. Astrue*, 2011 WL 824690 (N.D. Tex. Feb. 17, 2011)). According to Plaintiff, the court in *Devirrie* remanded a similar case in which a claimant of advanced age challenged a step-five finding of non-disability on the ground that "the ALJ failed to develop the record to determine the degree of vocational adjustment which would be required." *Id.* Plaintiff similarly cites *Homer*, in which the court remanded a denial of benefits for want of substantial evidence because the ALJ's decision "failed to properly solicit VE testimony in his finding regarding vocation." *Id.*

Plaintiff's reliance on *Devirrie* and *Homer* is misplaced. The court in *Devirrie* did not remand simply because the VE failed to address vocational adjustment in the context of the heightened standard for those of advanced age. Rather, the court remanded because it could not ascertain whether the ALJ "applied or even considered the heightened transferability standard." *Devirrie*, 2019 WL 4689026, at *4 ("*Because* the ALJ did not develop the record *such that it is clear he considered the heightened transferability requirements for a claimant of Plaintiff's age*, the Court concludes that he did not apply the correct legal standard.") (emphases added). In contrast, the ALJ here did make it clear that she

considered the heightened requirements. As stated, the ALJ cited the provisions of the Medical-Vocational Guidelines relevant to claimants of advanced age limited to sedentary work. A.R. 23. The ALJ quoted verbatim the heightened standard when determining Plaintiff had transferable skills. *Id*. And the ALJ made a specific finding that the particular skills transferrable from Plaintiff's PRW are "so similar" to those required for the jobs identified by the VE that Plaintiff would need to make very little, if any, vocational adjustment to perform them. *Id*. at 23. Thus, unlike *Devirrie*, it is clear from the record here that the ALJ applied the correct legal standard.

*Homer* similarly fails to bolster Plaintiff's argument. The court in *Homer* remanded a finding of necessary vocational adjustment because the ALJ failed to establish that the claimant's prior jobs had overlapping duties with those proposed by the VE as suitable. *Homer*, 2011 WL 824690, at *9. The only overlapping duty between the claimant's PRW and those identified by the VE was greeting people, which was not enough to constitute substantial evidence according to the court. *Id*. In the present case, the VE testified that Plaintiff's prior work experience translates to that of a medical secretary or general office clerk. A.R. 43–44.  The relevant skills she gained from this past work experience—operating a computer, compiling records, medical charts, answering the telephone, and maintaining files— significantly overlap with the skills required for those jobs found suitable by the ALJ: data entry clerk, clerk typist, and insurance clerk. *Id*. at 44–45. Such a high

degree of overlapping duties differentiates the facts of *Homer* from the case at hand.

Accordingly, because the ALJ found that Plaintiff would require very little, if any, adjustment in terms of tools, work processes, work settings, and industry, and because there is substantial evidence in the record to support this finding, the Court finds the ALJ applied the correct legal standard in finding Plaintiff not disabled at step five. *See Sergent v. Astrue*, 2011 WL 3299051, at *12 (S.D. Tex. Aug. 1, 2011) (affirming the ALJ's denial of benefits on similar grounds). Any error committed by the ALJ in not specifically asking the VE about the degree of vocational adjustment, though the undersigned finds none, would be harmless because the ALJ's opinion demonstrates she applied the correct legal standard. *Blair v. Comm'r*, 2014 WL 5336483, at *10 (E.D. Tex. Sept. 30, 2014).

## II

Plaintiff also claims that the ALJ failed to consider all of her vocationally significant impairments in determining her RFC. Pl.'s Br. 10 (ECF No. 12); Compl. 2, ¶ 8 (ECF No. 1). The ALJ found that Plaintiff's severe impairments include "obesity, back disorder, [o]steoarthritis, and [r]emote history of right rotator cuff tear with surgical repair." A.R. 16 (ECF No. 10-1). Plaintiff contends the ALJ erred in failing to explain the basis for finding Plaintiff's migraines were not a severe impairment, arguing this warrants reversal or remand.[3] Pl.'s Reply 4–6 (ECF No.

---

[3] Plaintiff does not argue that the ALJ applied an incorrect standard for evaluating a severe impairment under *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

16). But much of Plaintiff's argument focuses on the fact that the ALJ did not find these migraine headaches a severe impairment rather than on the ALJ's explanation or lack thereof. *See id.*; Pl.'s Br. 9–10 (ECF No. 12). Regardless, the Court disagrees that reversal or remand is warranted.

At step two of the sequential evaluation process, the ALJ determines whether identified impairments are "severe" or "not severe." *Herrera v. Comm'r*, 406 Fed. App'x 899, 903 (5th Cir. 2010). The claimant bears the burden of establishing that her impairments are severe. *See Bowen v. Yukert*, 482 U.S. 137, 146 n.5 (1987) ("The claimant first must bear the burden . . . at step two that [she] has a medically severe impairment or combination of impairments."). To do so, she must only "make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work." *Anthony v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992). The ALJ's determination of whether the claimant has met this standard "must be affirmed so long as it is supported by substantial evidence." *Garcia v. Astrue*, 2012 WL 13717, at *11 (S.D. Tex. Jan. 3, 2012) (citing *Anthony*, 954 F.2d at 295–96).

Here, there is substantial evidence in the record to support the ALJ's determination. The ALJ found that Plaintiff's obesity, back disorder, osteoarthritis, and remote history of right rotator cuff rear with surgical repair were severe impairments. A.R. 16 (ECF No. 10-1). While the ALJ did recognize that one of Plaintiff's alleged grounds for disability is migraine headaches, this was not otherwise addressed at step two. *See id.* at 16–17. Plaintiff points to her own

testimony and medical records as evidence of her chronic migraine headaches. *See* Pl.'s Br. 10. She identifies records in which she discussed with Dr. Melanie Reed suffering headaches lasting three-to-four hours or more up to twelve times a month. *Id.*; *see also* A.R. 867 (ECF No. 10-1). And she discussed with Dr. Reed a magnetic resonance imaging scan (MRI) of Plaintiff's brain revealing a white matter abnormality most likely related to chronic migraine headaches. A.R. 869 (ECF No. 10-1).

The record shows that Plaintiff has suffered from migraine headaches as far back as 2001, and MRI scans of her brain from 2001 through 2017 have consistently shown a pineal cyst and abnormal white matter. But this did not interfere with Plaintiff's ability to work until October 2016. *See* A.R. 505–07, 538, 566, 865 (ECF No. 10-1). Plaintiff had success treating the intensity of her headaches with Botox, but she discontinued these treatments in 2014 to focus on her back and leg pain. *Id.* at 867. While Plaintiff complained two years later of suffering twelve severe headaches per month in an August 2016 visit to Dr. Reed, she claimed that these headaches did not cause her to miss work. *Id.* at 367–68. In fact, Plaintiff testified that she did not retire until the pain associated with her back surgery on October 13, 2016, became too much—not because of her migraines. *Id.* at 38–39.

Not long after this surgery, Plaintiff denied having migraine headaches on seven different visits to Dr. Reed between May 2017 and March 2018. *Id.* at 739, 786, 792, 819, 848, 919, and 925. During this period, Dr. Reed recommended

Plaintiff be placed on long term disability due to various issues, none of which included migraine headaches. *See id.* at 729. And when asked at her July 2018 hearing before the ALJ what was still preventing her from working, Plaintiff failed to mention migraine headaches. Instead, she answered that she could not work due to pain in her left leg, muscle spasms while walking, numbness from her knee to her ankle, as well as "ongoing shin and ankle pain, numbness and tingling." *Id.* at 39–40.

Based on the record, Plaintiff has not shown that her migraine headaches had a *de minimis* effect on her ability to do work. *See Anthony v. v. Sullivan*, 954 F.2d 289, 294 n.5 (5th Cir. 1992). Instead, substantial medical evidence supports the ALJ's finding that migraine headaches did not interfere with Plaintiff's ability to perform work-related activities. *See Hamond v. Barnhart*, 124 Fed. App'x 847, 853 (5th Cir. 2005) (affirming the ALJ because there was "far more than a scintilla of evidence in the record that could justify [the] finding that [the plaintiff's] impairments were not severe disabilities"); *McDaniel v. Colvin*, 2015 WL 1169919, at *5 (N.D. Tex. Mar. 13, 2015) (affirming the ALJ's step-two determination because the ALJ considered relevant evidence and the claimant failed to show "any work-related limitations beyond those already found by the ALJ"). "The mere presence of some impairment is not disabling *per se.*" *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Dise v. Colvin*, 630 F. App'x 322, 326 (5th Cir. 2015) (holding that a "diagnosis is not, itself, a functional limitation").

Additionally, Plaintiff's success treating her headaches with Botox is relevant. The Fifth Circuit has explained that if "an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). This is not, as Plaintiff alleges, a post-hoc rationalization. *See* Pl.'s Br. 4–5 (ECF No. 16). Rather, the ALJ carefully considered these facts as part of the record in coming to her final determination. *See* A.R. 17 (ECF No. 10-1).

Plaintiff's claim that the ALJ failed to consider her migraines in determining her RFC also appears to be misplaced. The ALJ specifically noted that Plaintiff suffers "frequent headaches on a daily basis" in making the RFC determination. A.R. 19 (ECF No. 10-1). Courts in this district have upheld an ALJ's consideration of all of a plaintiff's vocationally significant impairments even when the ALJ failed to address or even mention a claimant's alleged impairment at step two. *See Duncan v. Saul*, 2020 WL 6120472, at *11 (N.D. Tex. Sept. 10, 2020).

Even if the ALJ did commit error at step two, "the Fifth Circuit has stated that a failure to make a finding at step two is not reversible error when an ALJ continues with the sequential evaluation process." *Id.* at *11 (citing *Herrera v. Comm'r*, 406 F. App'x 899, 903 (5th Cir. 2010)); *see also Mays v. Bowen*, 837 F.2d 1362, 1365 (5th Cir. 1988) (per curiam) (stating that "if the ALJ proceeds past the impairment step in the sequential evaluation process the court must infer that a severe impairment was found"). Any error committed by the ALJ in not addressing Plaintiff's migraine headaches, though the undersigned finds none, would be

16

"harmless because [the ALJ] proceeded beyond step two." *Duncan*, 2020 WL 6120472, at *11 (citing *Norris v. Berryhill*, 2017 WL 1078524, at *13 (N.D. Tex. Mar. 22, 2017)).

Accordingly, the Court finds that the ALJ did not err in considering all of Plaintiff's vocationally significant impairments in assessing her RFC or in determining Plaintiff's migraine headaches not to be a severe impairment.

### III

Plaintiff additionally argues that the ALJ's failure to include Plaintiff's migraine headaches as a severe impairment rendered the ALJ's hypothetical question defective. Pl.'s Br. 11 (ECF No. 12). Consequently, Plaintiff claims the VE's testimony does not constitute substantial evidence and fails to support the Commissioner's conclusion that she is not disabled. *Id.* Again, the Court does not agree.

To determine whether a VE's answer to an ALJ's hypothetical question provides substantial evidence supporting a denial of benefits, this Court applies the test supplied by the Fifth Circuit:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions . . . , a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994). "In other words, the hypothetical question to the VE cannot provide substantial evidence supporting the denial of benefits unless: (1) the hypothetical reasonably incorporates all the disabilities of the claimant recognized by the ALJ; and (2) the claimant or [her] representative is afforded the opportunity to correct the deficiencies in the question." *Tyler v. Saul*, 2020 WL 442527, at *5 (N.D. Tex. Aug. 4, 2020) (quoting *Medley v. Astrue*, 2011 WL 6840576, at *3 (N.D. Tex. Dec. 29, 2011)).

First, in *Tyler v. Saul*, the court found the ALJ satisfactorily incorporated all of the claimant's disabilities that the ALJ had recognized in the hypothetical posed to the VE because the language of the hypothetical mirrored that of the ALJ's RFC determination. *Id*. As such, the court concluded that the hypothetical included all of the limitations the ALJ found in making the decision. In the present case, the language of the ALJ's hypothetical question similarly mirrors that found in her RFC determination. The ALJ posed the following hypothetical to the VE during the administrative hearing:

> I'd like you to consider a hypothetical individual of the claimant's age, education and work history. This individual can lift and carry a maximum of ten pounds. Can stand and walk two of eight hours. They can sit six of eight hours. And it's occasional on all six postural movements. They can understand, remember and carry out detailed but not complex instructions.

A.R. 44 (ECF No. 10-1). The ALJ's RFC determination is substantially identical:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined

18

> in 20 CFR 404.1567(a) as lifting and/or carrying 10
> pounds occasionally and less than 10 pounds frequently,
> standing and/or walking 2 hours in an 8-hour workday,
> and sitting 6 hours in an 8-hour workday. The claimant
> can occasionally climb ramps/stairs, climb ladders,
> ropes, and scaffolds, balance, stoop, kneel, crouch, and
> crawl. The claimant can understand, remember, and
> carry out detailed, not complex instructions.

*Id.* at 17–18. Accordingly, the hypothetical "incorporate[s] reasonably all disabilities of the claimant recognized by the ALJ" and satisfies the first prong of the test mandated by the Fifth Circuit.

Second, Plaintiff and her attorney were both present at the hearing when the ALJ posed the hypothetical question to the VE. *Id.* at 31. Plaintiff had the opportunity to raise any defect with the ALJ following the VE's answer; the ALJ even asked counsel for Plaintiff if they had any questions for the VE. *See id.* at 45. Yet, Plaintiff declined to raise any issue or suggest any defect with the ALJ's answer or the VE's answer. *See id.* at 45. Therefore, the second prong of the Fifth Circuit's test is also satisfied. *See Tyler v. Saul*, 2020 WL 442527, at *6 (N.D. Tex. Aug. 4, 2020) (finding the claimant had an opportunity to cure any deficiency in the ALJ's question where claimant and his representing attorney were present at a hearing and failed to raise any issues regarding the hypothetical question posed to the VE). Accordingly, the Court finds that the hypothetical question was not defective.

## IV

Finally, Plaintiff argues that the VE's response to the ALJ's hypothetical question "is not substantial evidence to support the Commissioner's ultimate

determination." Pl.'s Br. 11 (ECF. No. 12). It is well established that a determination of non-disability based on a VE's answer to a defective question is not supported by substantial evidence and cannot stand. *Tyler*, 2020 WL 442527, at *6 (citing *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001)). But as stated, the hypothetical question here was not defective. Accordingly, the Court should reject Plaintiff's claim that a defective question rendered the VE's response insufficient evidence to support the Commissioner's claim.

## Conclusion

For the foregoing reasons, the hearing decision of the ALJ should be AFFIRMED in all respects.

**SO ORDERED**.

December 1, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).